**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HERMES IP MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>LENOVO GROUP LTD,<br><br>Defendant. | Case No. 2:25-cv-00944-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT LENOVO GROUP LTD'S PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

# TABLE OF CONTENTS

**Pages**

I. INTRODUCTION ....................................................................................................1

II. STATEMENT OF THE ISSUES TO BE DECIDED.......................................................1

III. LEGAL STANDARDS FOR PATENT ELIGIBILITY UNDER 35 U.S.C. § 101 ...........2

IV. ARGUMENT ..........................................................................................................2

A. The ’720 Patent Is Ineligible Under 35 U.S.C. § 101. ............................................2

1. Claim 1 Of The ’720 Patent Is Representative. ..........................................2

2. The ’720 Asserted Claims Are Directed To The Abstract Idea Of Organizing And Displaying Visual Information.........................................4

3. The ’720 Asserted Claims Recite No Inventive Concept. ...........................6

4. Hermes’s Amended Allegations Cannot Overcome The Ineligible Subject Matter Of The ’720 Patent. ...........................................................7

B. The ’060 Patent Is Ineligible Under 35 U.S.C. § 101. ............................................8

1. Claim 1 Of The ’060 Patent Is Representative. ..........................................8

2. The ’060 Asserted Claims Are Directed To The Abstract Idea Of Collecting And Associating Location And Image Data To Present Related Content To A User.........................................................................9

3. The ’060 Asserted Claims Recite No Inventive Concept. .........................12

4. Hermes’s Amended Allegations Cannot Overcome The Ineligible Subject Matter Of The ’060 Patent. .........................................................14

V. CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ........................................................................10

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014)................................................................................ *passim*

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..........................................................................7

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
813 F. App'x 584 (Fed. Cir. 2020) ...........................................................11, 12, 13

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)......................................................................8, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Natl'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)..........................................................................2

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)........................................................................12

*Electric Power Group v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)..........................................................5, 10, 11, 12

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021)........................................................................11

*Genetic Techs. Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016)..........................................................................2

*Int'l Bus. Machines Corp. v. Zillow Grp.*,
50 F.4th 1371 (Fed. Cir. 2022) ..................................................................... *passim*

*Intellectual Ventures I LLC v. Capital One Finance Corp.*,
850 F. 3d 1332 (Fed. Cir. 2017)..........................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)......................................................................5, 6

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F. 4th 1280 (Fed. Cir. 2024) ..................................................1, 2, 10, 13

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025), *cert. docketed*, No. 25-505 (U.S. Oct. 21, 2025) ....13

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....2, 7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)....14

*Stevenson v. Toce*,
113 F.4th 494 (5th Cir. 2024) ....8

*In re TLI Commc'ns, LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....6

*Torus Ventures v. Cawley Partners*,
Nos. 2:24-CV-00552-JRG, 2:24-CV-00570-JRG, 2025 WL 1799327 (E.D. Tex. June 30, 2025)....11, 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....8, 10, 14

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)....13

*Voxathon LLC v. Alpine Electronics of America, Inc.*,
No. 2:15-CV-562-JRG, 2016 WL 260350 (E.D. Tex. Jan. 21, 2016) ....11

*Voxathon LLC v. FCA US LLC*,
671 F. App'x 793 (Fed. Cir. 2016) ....11

**Statutes**

35 U.S.C. § 101 .... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....2, 7

## I. INTRODUCTION

Defendant Lenovo Group Ltd. ("LGL") moves to dismiss Plaintiff Hermes IP Management LLC's ("Hermes") infringement claims for United States Patent Nos. 8,855,720 ("'720 Patent") and 9,613,060 ("'060 Patent") under 35 U.S.C. § 101. *See* Dkt. 24 (hereinafter "Amended Complaint" or "Am. Compl."). The asserted claims of the '720 Patent are patent ineligible because they are directed to the abstract idea of organizing and displaying visual information. Indeed, the Federal Circuit recently confirmed that similar claims reciting the organization and display of visual information are directed to an abstract idea and must therefore include an inventive concept to be found patent-eligible. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1383 (Fed. Cir. 2022) (hereinafter "*IBM*"). But the asserted claims of the '720 Patent include no such inventive concepts, and Hermes has pled none.

Hermes's '060 Patent fares no better. The '060 Patent claims are directed to the abstract idea of collecting and associating location and image data to present related content to a user. In *Mobile Acuity Ltd. v. Blippar Ltd.*, the Federal Circuit held that claims directed to collecting information, "associating information with images," and "presenting information" based on the collected and associated information were directed to an abstract idea. 110 F.4th 1280, 1292 (Fed. Cir. 2024). Likewise, the '060 Patent claims recite taking a photo, inserting location information into the image, and presenting related map or navigation information. And they use conventional cameras, prior art modules, and generic terminals to carry out the abstract idea. They do not include any inventive concept—no new hardware, algorithm, or computer improvement—to transform that abstract idea into patent-eligible subject matter. Accordingly, the Court should find the asserted claims of the '720 and '060 Patents ineligible under 35 U.S.C. § 101, and dismiss Hermes's infringement claims.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Hermes's claims for infringement of the '720 Patent against LGL should be dismissed because the '720 Patent is ineligible under 35 U.S.C. § 101.

2. Whether Hermes's claims for infringement of the '060 Patent against LGL should be dismissed because the '060 Patent is ineligible under 35 U.S.C. § 101.

## III. LEGAL STANDARDS FOR PATENT ELIGIBILITY UNDER 35 U.S.C. § 101

In *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), the Supreme Court set forth a two-step test for patent eligibility under 35 U.S.C. § 101. At Step One, the Court examines the focus of the asserted claim to determine whether it is directed to an abstract idea. *Id.* at 216–218. At Step Two, the Court determines whether the claim contains an inventive concept that "transforms the nature of the claim' into a patent-eligible application" by ensuring it amounts to "significantly more than a patent upon the ineligible concept itself." *Id.* at 217–18. Claims directed to an abstract idea that contain no inventive concept are ineligible under 35 U.S.C. § 101. *Alice*, 573 U.S. at 227. *Alice*'s two-step test is a question of law that can be resolved on a Rule 12(b)(6) motion. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

## IV. ARGUMENT

### A. The '720 Patent Is Ineligible Under 35 U.S.C. § 101.

#### 1. Claim 1 Of The '720 Patent Is Representative.

It is "unnecessary" to separately address each claim of an asserted patent where the claims are all "substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Once the movant makes a *prima facie* showing that all asserted claims are "substantially similar and linked to the same ineligible concept," the burden shifts to the patentee to identify any material differences. *Mobile Acuity Ltd.*, 110 F.4th at 1290.

Hermes alleges that LGL infringes claims 1, 2, 4, 5, 6, 8, 9, 10, 11, 13, 14, and 15 of the

’720 Patent (“’720 Asserted Claims”). All ’720 Asserted Claims are directed to the abstract idea of organizing and displaying visual information. *See IBM*, 50 F.4th at 1382 (“organizing and displaying information in layers is an abstract idea”). Claim 1 of the ’720 Patent is representative of all asserted claims. It recites a method comprising: (1) allocating shortcut icons among a plurality of screens; (2) displaying one of those screens in an idle state; (3) switching to another screen upon receiving a request to do so; and (4) displaying indicators corresponding to the screen. ’720 Patent, cl. 1. Claims 2, 4, 5, and 6 depend from and are substantially similar to claim 1. Specifically, claim 2 adds the limitation “wherein the selecting comprises ***displaying***, on the display unit, ***the shortcut icons*** of the application programs.” ’720 Patent, cl. 2.[1] Its focus is on displaying shortcut icons, and is directed to the same abstract idea as claim 1. Claim 4 adds a limitation about how a user interfaces with the device; it does not change the abstract idea to which the device is directed. *Id.*, cl. 4. Claim 5 adds a limitation focused on the organization and display of visual information and is therefore directed to the same abstract idea as claim 1. *Id.*, cl. 5. And claim 6 merely adds specific types of information for the screen to display, e.g., “radio wave reception strength.” *Id.*, cl. 6.

Collectively, the “mobile terminal” and “program” claims essentially perform the method of claim 1 and its dependent claims. Independent claim 8 covers a “mobile terminal” that essentially performs the method of claim 1. Claims 9, 10, and 11 are the “mobile terminal” equivalents of claims 4, 5, and 6 respectively (claim 11 adds “time” to the list of displayed “operating conditions” in claim 6). Independent claim 13 covers “[a] non-transitory computer-readable recording medium for storing a program” for performing the method of claim 1. Claims 14 and 15 are the “program” equivalents of claims 4 and 6 respectively (claim 15 again adds

---

[1] Emphasis has been added unless otherwise noted.

"time"). Neither the "mobile terminal" nor "program" claims include functionality that goes beyond the method of claim 1. In short, claim 1 is representative because all the '720 Asserted Claims focus on the organization and display of visual information.

#### 2. The '720 Asserted Claims Are Directed To The Abstract Idea Of Organizing And Displaying Visual Information.

At *Alice* Step One, the Court looks to the focus of the asserted claims to determine if they are directed to an abstract idea. *Alice*, 573 U.S. at 216–218. Claim 1 focuses on the organization and display of visual data—an abstract idea. Specifically, the claim recites:

> A method of setting **an idle screen to be displayed** in an idle state of a mobile terminal among a plurality of screens usable as the idle screen, the method comprising:
>
> > selecting application programs from application programs installed in the mobile terminal, based on a selection from a user, wherein **each of the selected application programs is allocated to one of the screens** so that the screens present shortcut icons of the application programs allocated thereto;
> >
> > **displaying, in the idle state, one of the screens** as the idle screen on a display unit of the mobile terminal, wherein the displayed idle screen presents the shortcut icons corresponding to the application programs allocated thereto;
> >
> > **displaying,** in response to an idle screen switch request**, a next one of the screens on the display unit according to an order of the screens**; and
> >
> > setting a currently displayed screen as the idle **screen to be displayed in the idle state**,
> >
> > wherein
> >
> > the idle screen is **displayed on the display unit with indicators** corresponding to the screens, and
> >
> > **an indicator** corresponding to the screen, which is set as the idle screen, **is displayed distinguishably from the rest of the indicators**.

'720 Patent, cl. 1. Collectively, the claim amounts to the organization and display of visual data—particularly idle screens, shortcut icons, and visual indicators—a concept the Federal Circuit has held abstract. *See, e.g.*, *IBM*, 50 F.4th at 1380 ("[T]he [patent-in-suit] is directed to the abstract idea of ***organizing and displaying visual information***."). In *IBM*, the court addressed claims that

are similar to the ’720 Asserted Claims. The *IBM* representative claims “merely organize and arrange sets of visual information into layers and then present said layers on a generic display device.” *Id.* at 1380.

The same is true in this case. The color-coded table attached as Exhibit 1 demonstrates the similarities between the *IBM* representative claim and claim 1 of the ’720 Patent. The purple elements involve displaying visual information, the red elements involve organizing visual information, and the green elements refer to generic user inputs. Both claims recite how visual information is organized and displayed. In the *IBM* claim, that information is organized and displayed in “layers.” There, “layers of interest can be brought to and emphasized at the top of the display while other layers are deemphasized.” *Id.* at 1375. The ’720 Patent similarly allows information to be brought to the top of the display and emphasized on “screens,” which perform largely the same function of organizing and displaying data as the layers in the IBM patent. *See, e.g.*, ’720 Patent, Fig. 4. Neither solution “recite[s] an improvement in any computing technology.” *Id.* at 1380. Thus, as in *IBM*, the ’720 Patent claims are directed to an abstract idea.

Moreover, the Federal Circuit has repeatedly held that the organization and display of information is an abstract idea. For example, in *Electric Power Group v. Alstom S.A.*, it explained “that merely presenting the results of abstract processes . . . is abstract as an ancillary part of collection and analysis.” 830 F.3d 1350, 1354 (Fed. Cir. 2016). In *Intellectual Ventures I LLC v. Capital One Finance Corp.*, the asserted claims were focused on a “dynamic document” that “is nothing more than an interface for displaying and organizing [ ] underlying data.” 850 F.3d 1332, 1341 (Fed. Cir. 2017). The Federal Circuit explained that even though structures added a degree of particularity to the claims, “the underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing, displaying, and manipulating data of particular

documents." *Id.* And in *Interval Licensing LLC v. AOL, Inc.*, the Federal Circuit held that claims were directed to an abstract idea because "they consist of generic and conventional information acquisition and organization steps that are connected to, but do not convert, the abstract idea—displaying a second set of data without interfering with a first set of data—into a particular conception of how to carry out that concept." 896 F.3d 1335, 1346 (Fed. Cir. 2018). That is what the '720 Asserted Claims purport to cover: reciting generic steps for organizing shortcut icons amongst idle screens and displaying the results. Accordingly, at *Alice* Step One, the '720 Asserted Claims are directed to the abstract idea of organizing and displaying visual information.

**3. The '720 Asserted Claims Recite No Inventive Concept.**

At *Alice* Step Two, courts determine whether the claim contains an inventive concept that "'transform[s] the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217.

The '720 Asserted Claims do not recite any inventive concept because they are "not directed to a computer specific problem and merely use[] well-understood, routine, or conventional technology . . . to more quickly solve the problem of layering and displaying visual data." *See IBM*, 50 F.4th at 1382. Although the claims include some tangible components—*e.g.*, an "idle screen of a mobile terminal"—they only recite using those conventional components in well-understood, conventional ways. That is plainly insufficient to confer patent eligibility. *In re TLI Commc'ns, LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). The specification itself clearly indicates the known and conventional nature of these components and their functions. *See* '720 Patent, 2:21–29, 2:30–34, 1:65–2:11 (describing known methods of customizing the idle screen).

One way claims can recite an inventive concept is if they include more than conventional activities previously known to the industry. *In re TLI Commc'ns*, 823 F.3d at 613 (citing *Alice*, 573 U.S. at 225). Claim 1 falls short because the claimed functional steps simply organize and display visual information on screens in the same way that one can organize and display different

playing cards. Any card among a deck could be displayed as an "idle screen," the cards display suits (e.g., clubs, spades) equivalent to "shortcut icons," and anyone handling the deck of cards could change which one is displayed by shuffling the deck. Moreover, the cards can indicate that the displayed card is distinguishable from the other cards merely by fanning out the deck.

To the extent the '720 Patent's specification purportedly recites details that go beyond the performance of well-understood, routine, conventional activities, those details are not claimed. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (to find an inventive concept, the claims must recite the purportedly unconventional activities disclosed in the specification). In fact, in its description of how the alleged invention is "advantageous," the '720 Patent explains that "even when an application is currently used for the idle screen, it can be easily replaced with another application by single key input." '720 Patent, 7:66–8:3. Only claim 3 even mentions "a key button," but Hermes does not assert claim 3, and the claim says nothing about a "single key input." Nor does claim 3 include any details reciting an inventive concept in this key; to the contrary, it claims only the well-understood function of a button on a mobile terminal, i.e., changing a display in response to pushing a button (like changing the channel on a television remote). And because the Amended Complaint also fails to set forth how the alleged unconventionality was a specific improvement over the prior art, dismissal with prejudice in the context of Rule 12(b)(6) is appropriate. *SAP Am., Inc.*, 898 F.3d at 1166-67.

#### 4. Hermes's Amended Allegations Cannot Overcome The Ineligible Subject Matter Of The '720 Patent.

Hermes's Amended Complaint adds only conclusory allegations that the '720 Asserted Claims are "directed to unconventional activity." *See* Am. Compl., ¶¶ 21–22, Ex. C ¶¶ 14–18. These new allegations do not change the § 101 analysis.

***First***, Hermes's amended allegations are legally irrelevant because they conflate eligibility

with novelty. *See, e.g.*, *id.* ¶¶ 21–22 and Ex. C ¶¶ 19, 14–16. "Eligibility and novelty are separate inquiries." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017). At *Alice* Step One, the question "is whether the claims as a whole are 'directed to' an abstract idea, regardless of whether the prior art demonstrates that the idea or other aspects of the claim are known, unknown, conventional, unconventional, routine, or not routine." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). Thus, even if the claims are allegedly different from the prior art, they are still directed to an abstract idea. *See id.*

***Second***, even if unconventionality were relevant, Hermes's allegations are entitled to no weight because they are contradicted by the claims of the '720 Patent and materials in Dr. McClellan's declaration. It is blackletter law that "[i]f an exhibit to a complaint contradicts an allegation in the complaint, the exhibit controls." *Stevenson v. Toce*, 113 F.4th 494, 502–03 (5th Cir. 2024). For example, Hermes asserts that "the claims are directed to unconventional activity" (Am. Compl., ¶ 22) based on Dr. McClellan's assertion that "[c]onventional mobile terminals . . . comprised a singular and ***static*** idle screen" (Ex. C, ¶ 14). That argument is directly contradicted by the Nokia S60 referenced in his declaration. *See id.*, ¶ 16. That device includes a feature called "Active standby mode," said to provide "fast access to your ***most frequently used applications***." *Id.* (under "Active standby mode" heading). In other words, by showing the most frequently used applications, the standby screen is not "static." Accordingly, Hermes's allegation of the unconventionality does not preclude a finding of ineligibility under 35 U.S.C. § 101.

**B. The '060 Patent Is Ineligible Under 35 U.S.C. § 101.**

**1. Claim 1 Of The '060 Patent Is Representative.**

Hermes alleges that LGL infringes claims 1, 2, 3, 4, 5, 6, 7, 9, 11, 12, 13, 14, 15, 16, 17, 19, 21, 22, and 23 (the "'060 Asserted Claims") of the '060 Patent. All the '060 Asserted Claims share the same core concept as claim 1: collecting location and image data, associating that data,

and providing related content to the user. ’060 Patent, cl. 1. Independent claim 13 is identical to claim 1 and independent claim 15 simply recasts the same steps in apparatus form. *Id.*, cls. 13, 15.

The dependent claims add only trivial limitations, such as specifying the type of location data or the form of the content or service. For example, claim 5 specifies collecting “current location data” and claim 2 describes compressing and storing the data. Claims 7, 9, 17, and 19 specify how the location data is collected using conventional components, such as a “location data providing system,” “a Global Positioning System (GPS),” or “a base station or a satellite.” Claims 11, 12, and 16 recite generic hardware, such as a “camera phone or digital camera” with a “module for receiving the location data.” Claims 3, 4, 6, 14, and 21-23 limit the displayed content/service to familiar and conventional forms—a “map,” “traffic information,” and “navigation data.” Thus, claim 1 is representative because all the ’060 Asserted Claims focus on collecting and associating location and image data to present related content to a user.

**2. The ’060 Asserted Claims Are Directed To The Abstract Idea Of Collecting And Associating Location And Image Data To Present Related Content To A User.**

Claim 1 focuses on collecting data (an image and its location), associating the location with the image, and presenting related information to a user (displaying a location-based service). Specifically, the claim recites:

> A location-based service **method using image data** provided by a terminal equipped with a camera, and **using location data** that includes location information of the terminal, comprising:
>
> > **generating first image data** with the terminal at a predetermined location;
> >
> > **receiving location data** of the predetermined location;
> >
> > **prompting a user** to choose whether or not to insert the received location data into the first image data to generate a second image data and, when the user chooses to do so**, inserting the received location data into the first image data** to generate a second image data;

> **transmitting the second image data**, the second image data including the first image data and the location data, to another terminal;
>
> **receiving**, at the another terminal, **a selection input for an image** corresponding to the second image data, from the user;
>
> **displaying**, at the another terminal, **an image** corresponding to the first image data, **and a menu** inquiring about whether to select a location-based service;
>
> **receiving**, at the another terminal, via the displayed menu**, a selection input** for the location-based service, from the user;
>
> **receiving**, at the another terminal, **location-based service data** corresponding to the location data of the selected second image data; and
>
> **providing the location-based service** to the another terminal by using the received location-based service data.

'060 Patent, cl. 1. The claim amounts to the collection, organization, and presentation of information—a sequence the Federal Circuit has long held abstract. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353 ("[C]ollecting information, analyzing it, and displaying certain results of the collection and analysis" are "within the realm of abstract ideas."); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) (finding the "steps of obtaining, manipulating, and displaying data" abstract).

For example, in *Mobile Acuity*, the Federal Circuit considered a claim describing "[a] method of storing user-defined information for future access by multiple parties." 110 F.4th at 1285–86. The court held that the claim was "directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison." *Id.* at 1292. Here, the '060 Patent follows the same pattern: reciting collecting image and location data, associating those data items (inserting the location into the image), and presenting related information (maps or navigation data). Like *Mobile Acuity*, the '060 Asserted Claims recite only generalized information-handling steps performed by generic devices.

The Federal Circuit has repeatedly held that claims reciting a desired result without

specifying how to achieve it are abstract. *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery."); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363–64 (Fed. Cir. 2021) (finding claims reciting the result of "overcoming a mobile device's security sandbox" abstract as they "do not at all describe how that result is achieved"). Claim 1 is a list of such results—generating data, receiving data, inserting data, transmitting data, displaying image data, receiving location-based service data, and ultimately providing the location-based service—without specifying how to achieve those results. Similarly, this Court has held that claims which use "result-based functional language" and are a "functional abstraction, not a description of any specific technical solution" are abstract. *Torus Ventures v. Cawley Partners*, Nos. 2:24-CV-00552-JRG, 2:24-CV-00570-JRG, 2025 WL 1799327, at *5 (E.D. Tex. June 30, 2025). Here too, the claims are directed to a result—collecting location data and showing related data—without saying how to accomplish that result.

Furthermore, limiting the information collected and provided to a particular application, such as a location application, does not render the claims concrete. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). In fact, the Federal Circuit held that "tailoring the provision of information based on user characteristics—such as location—is an abstract idea." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020). Similarly, as this Court explained in *Voxathon LLC v. Alpine Electronics of America, Inc.*, using tailored subsets of collected data is also abstract. *See* No. 2:15-CV-562-JRG, 2016 WL 260350, at *4 (E.D. Tex. Jan. 21, 2016)*, aff'd*,

*sub nom. Voxathon LLC v. FCA US LLC*, 671 F. App'x 793 (Fed. Cir. 2016).

Likewise, combining two types of information—image data and location data—does not confer eligibility. *See Digitech Image*, 758 F.3d at 1351 (holding that "taking two data sets and combining them into a single data set" was "an ineligible abstract process"). Like *Digitech*, the '060 Asserted Claims merely collect and combine image and location information into a data set so that related content can be displayed. Such reorganization, without any improvement to the technology underlying how the data are captured, processed, or transmitted, is an abstract idea.

The '060 Patent's specification confirms that these abstract steps merely use conventional computers, rather than improving their performance. The purported solution was simply to include "location information . . . in the photo information" to "provide various location-based services." '060 Patent, 1:57–62. The inventors of the '060 Patent do not claim to have invented tagging photos with location data; rather, the patent itself cites prior art that disclosed tagging. *See, e.g.*, *id.*, 2 (References Cited) (citing U.S. Pub. No. 2004/0229656 (Ex. 2) which describes, at ¶ [0117], a "GPS Info tag" containing "position information," and U.S. Pub. No. 2002/0101619 (Ex. 3) which shows, at ¶[0060], Fig. 16, an image with "added-to-image information (tag information)").

The '060 Patent identifies no new technique for capturing, processing, or transmitting data. Instead, it uses a standard camera phone or digital camera, conventional GPS, and ordinary wireless or Internet transmission to combine image and location information. *Id.*, 3:4–13, 3:44–67, 4:13–33. Such recitations fail *Alice* Step One, because they "merely use computers as tools to implement an independently abstract idea," rather than improve their operation. *Brit. Telecomms.*, 813 F. App'x at 587; *see also Elec. Power*, 830 F.3d at 1354.

### 3. The '060 Asserted Claims Recite No Inventive Concept.

At *Alice* Step Two, courts determine whether the claim contains an inventive concept by adding significantly more than the abstract idea itself. The '060 Asserted Claims fail this standard.

The specification describes the invention as improving user convenience and access to location services. *See* '060 Patent, 1:24–55 (contrasting prior art that only "show[ed] a user the image information" with the invention's goal to also "show[] the user the shot location by map or guid[e] the user to the location"). But increasing the speed or convenience of computers does not supply an inventive concept. *See Mobile Acuity*, 110 F.4th at 1294; *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025), *cert. docketed*, No. 25-505 (U.S. Oct. 21, 2025).

The specification describes no new mechanism to capture images, determine location, combine data, transmit data, or render displays. The patent describes the "terminal" as an ordinary device such as "a PCS phone, a cellular phone, [or] a PDA phone." '060 Patent, 4:34–39. Photos are taken with a conventional camera phone; location data is obtained from standard GPS; and the location is inserted into the image data without any new technical process. *Id.*, 3:23–43, 4:1–8. Such recitation of generic, conventional components cannot confer eligibility. *See, e.g.*, *Brit. Telecomms.*, 813 F. App'x at 587 (holding recitation of "generic computer hardware" such as "a telecommunications system" and "terminal" was not "an inventive concept"); *Torus Ventures*, 2025 WL 1799327, at *8; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding ineligible claims that "implement the abstract idea with routine, conventional activity").

The remaining claims likewise fail to recite an inventive concept. *See* '060 Patent, cls. 2–7, 9, 11–17, 19–23. Claim 13 is identical to claim 1, and apparatus claim 15 simply implements the method with generic components such as a "camera section" or "compression controller." *Id.*, 7:18–8:28. The dependent claims 2, 5, 7, 9, 17, and 19 add only minor limitations specifying the type of location data or how it is collected, and claims 11, 12, and 16 recite generic camera phone hardware. *See supra*, Section IV.B.1. Claims 3, 4, 6, 14, and 21–23 simply limit the displayed content/service to familiar forms. *Id.* None of those generic elements add meaningfully more than

the abstract idea or introduce a specific technical solution. And the ordered combination of steps—capturing an image, associating it with location data, transmitting the combined data, and displaying related information—is arranged in an expected, ordinary sequence (the system must obtain image data before associating it with location data in order to show related information), which cannot provide the inventive concept. *See Two-Way Media*, 874 F.3d at 1339.

#### 4. Hermes's Amended Allegations Cannot Overcome The Ineligible Subject Matter Of The '060 Patent.

Hermes amended its complaint—supported by the McClellan declaration—to add conclusory allegations that the '060 Asserted Claims are "directed to unconventional activity." *See* Am. Compl., ¶¶ 27–29, Ex. C ¶¶ 19–24. These allegations do not change the analysis.

***First***, like Hermes's amended allegations for the '720 Patents, its '060 Patent amended allegations regarding "unconventionality" are legally irrelevant because they conflate eligibility with novelty. *See, e.g.*, *id.* ¶¶ 27–29, Ex. C ¶¶ 19, 21–24 (discussing alleged limitations in "conventional camera phones" in the prior art); *Two-Way Media*, 874 F.3d 1329; *CardioNet*, 955 F.3d at 1372 (holding that, at *Alice* Step One, the question is whether the claims are directed to an abstract idea, regardless of whether the prior art demonstrates that the idea was "unconventional"). Even if the claims are allegedly different from the prior art, they may still be abstract.

***Second***, even if unconventionality were relevant, Hermes's allegations are affirmatively contradicted by the intrinsic record. When allegations in the complaint are contradicted by the intrinsic record, a court need not accept those allegations as true. *See, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912–13 (Fed. Cir. 2017) (patent ineligible in light of intrinsic evidence showing the relevant technologies to be well-known). Hermes and Dr. McClellan assert, without proof, that "conventional camera phones" "did not utilize geo-location or geo-tagging," that providing a location-based service using location captured with a photo was

unconventional, and that "embed[ding] positional data in image files on limited-resource mobile terminals" was infeasible. *See* Am. Compl., ¶¶ 27–29, Ex. C ¶¶ 19–24.[2] But the '060 Patent cites prior art—such as U.S. Patent No. 6,437,797 (Ota) (Ex. 4)—that expressly describes camera/GPS integration and geotagging as conventional. '060 Patent, 2 (References Cited). Ota explains: "There is a ***conventional*** system, where a GPS unit is connected to (or built in) a digital camera and where captured images and GPS information such as positional information relating to the captured images are recorded." Ota, 1:19-22; *see also id.*, 3:10–27 ("the GPS receiver 14 can be connected to or built into the digital camera" that "records the captured images as well as the GPS information relating to each captured image."); *see also* US20040229656A1 (Ex. 5), ¶ [0094] ("[T]he cellular phone 3a has a function to insert the positional information of a photographic location into an image file and to transmit the image file."). Ota further describes providing an electronic map displaying the "captured images and the location of each captured image." *Id.*, 2:13–18.

***Third***, Hermes fails to connect any purported unconventionality to the Asserted Claims. Hermes's expert, states that the claims are directed to "how to efficiently embed positional data in image files on limited-resource mobile terminals and have map/navigational correlation performed automatically." But the claims do not mention "resource-limited" terminals, "efficient" embedding, or "automatic" correlation. Hermes's new allegations cannot save the claims.

## V. CONCLUSION

For all these reasons, LGL respectfully requests that the Court grant this Motion and dismiss Hermes's patent infringement claims for the '720 and '060 Patents under 35 U.S.C. § 101.

[2] Indeed, Dr. McClellan's allegation that "it was not until the release of the iPhone 3G in 2008 that geo-tagging image data on camera phones was introduced" (Am. Compl., Ex. C ¶ 22) is unsupported by the Wikipedia article he cites, which makes no mention of the ***first*** introduction of geo-tagging on any camera phone.

Dated: December 15, 2025

Respectfully submitted,

/s/ *Melissa R. Smith*
Melissa R. Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Michael E. Jones
Shaun William Hassett
**POTTER MINTON**
102 North College, Suite 900
Tyler, TX 75702
Telephone: (903) 525-2239
Facsimile: (903) 531-3939
mikejones@potterminton.com
shaunhassett@potterminton.com

Justin P.D. Wilcox (admitted in E.D. Tex.)
David Shaw (admitted *pro hac vice*)
**DESMARAIS LLP**
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
LenovoHermesDLLPService@desmaraisllp.com

Peter Magic (admitted *pro hac vice*)
Kyle Curry (admitted *pro hac vice*)
**DESMARAIS LLP**
101 California Street, Suite 3000
San Francisco, CA 94111
Telephone: (415) 573-1900
Facsimile: (415) 573-1901
Email:
LenovoHermesDLLPService@desmaraisllp.com

Karim Oussayef (admitted *pro hac vice*)
Carson Olsheski (admitted *pro hac vice*)
Caitri Feddeler (admitted *pro hac vice*)
Amy Wann (admitted *pro hac vice*)

Paul Macri (admitted *pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue, 26th Floor
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
Email:
LenovoHermesDLLPService@desmaraisllp.com

*Counsel for Defendant Lenovo Group Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF filing system, which will generate and send an e-mail notification of said filing to all counsel of record.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER**

| | |
|---|---|
| ____ | The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability. |
| __X__ | The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability. |

*/s/ Melissa R. Smith*
Melissa R. Smith