GILLAM &SMITH LLP

Harry L. "Gil" Gillam, Jr.
Managing Partner
gil@gillamsmithlaw.com

Melissa Richards Smith
Managing Partner
melissa@gillamsmithlaw.com

Tom Gorham, Partner
tom@gillamsmithlaw.com

Travis Underwood, Partner
travis@gillamsmithlaw.com

McKellar Karr, Associate
mckellar@gillamsmithlaw.com

303 South Washington Avenue, Marshall, Texas 75670
7232 Crosswater Avenue, Tyler, Texas 75703

P 903.934.8450 | F 903.934.9257
www.gillamsmithlaw.com

December 31, 2025

**Via ECF**

The Honorable Rodney Gilstrap
U.S. District Court for the Eastern District of Texas
100 East Houston Street
Marshall, Texas 75670

Re: *Hermes IP Management LLC v. Lenovo Group Ltd.*, Civil Action No. 2:25-cv-00944-JRG

Dear Judge Gilstrap:

Pursuant to the Court's Standing Order Regarding Motions Under 35 U.S.C. § 101, the parties respectfully submit this letter regarding their disagreement as to whether claim construction is needed before the Court can determine patent eligibility under Section 101.

**<u>Hermes' Position: Defendant's Motion Should Be Adjudicated After Claim Construction</u>**

"It will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). For example, this Court has held that "[i]n order for the Court to determine whether the patents contain an inventive concept, it is necessary for there to be a settled interpretation of the claim language." *Dynamic Applet Techs., LLC v. Mattress Firm, Inc.*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 5306647, at *6-7 (E.D. Tex. Aug. 29, 2018), report and recommendation adopted, No. 4:17-CV-860-ALM-KPJ, 2018 WL 4456820 (E.D. Tex. Sept. 18, 2018). The Court may decline to rule on or deny a Rule 12 motion if it appears there are potential constructions of key claim terms that, if adopted, would render the claims subject matter eligible. *Execware, LLC v. BJ's Wholesale Club, Inc.*, C.A. No. 14-233-LPS, 2015 WL 5734434, at *2-5 (D. Del. Sept. 30, 2015); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 835 (E.D. Tex. 2014) (Bryson, J., sitting by designation). "A definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule." *Phoenix Licensing, L.L.C. et al. v. CenturyLink, Inc.*, Case No. 2:14-cv-965-JRG-RSP, 2015 U.S. Dist. LEXIS 134038 at *9 (E.D. Tex. August 14, 2015).

A. <u>The Claims of the '720 Patent Require Construction Before Any Ruling on Eligibility</u>

Applying the correct constructions to the claims of the '720 Patent would, at a minimum, impact the Court's determination of whether the claims contain an inventive concept. The '720 Patent provides an example of a conventional idle screen, which shows frequently-used applications. Doc. No. 24-2 at 2:12-20. It goes on to enumerate several problems with conventional idle screens, stating, in part, "although basic applications . . . may be given shortcuts on the key input module for direct access, the limited number of key buttons on the terminal makes it impossible to assign shortcuts to all of the ever-increasing applications." *Id.* at 2:23-34. Further, Plaintiff's Amended Complaint includes the Declaration of Stan McClellan, Ph.D., which states, among other things, that the claim requirement of "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens" shows that the claims of the'720 Patent are directed to unconventional activity. Doc. No. 24-3 at ¶ 17-18. Defendant improperly minimizes Dr. McClellan's statements about the problems with conventional idle screens, and it does not even mention the '720 Patent's discussion of these problems.

The correct construction of the claim phrase "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens" is "in response to an input, circulating among the plurality of idle screens to display a preceding or succeeding screen." This proposed construction is supported by at least the '720 Patent (Doc. No. 24-2) at 2:51-67; 3:1-25; 4:15-18; 5:13-20; and 5:41-53. Under this construction, the fact that the claims are directed to unconventional activity at the time of their invention is more clear—as circulating among a plurality of idle screens was unconventional. Doc. No. 24-3 at ¶ 18. The significance of this construction is revealed by Defendant's Motion itself. Defendant argues that the claims "only recite using . . . conventional components in well-understood, conventional ways." Doc. No. 31 at p. 6. The proposed construction belies this argument as circulating among a plurality of idle screens is something that could not be done with conventional idle screens, which were singular and static. Further, Defendant argues that the "active standby mode" of the Nokia S60 contradicts Plaintiff's position that conventional mobile terminals comprised a singular and static idle screen." Doc. No. 31 at p. 8. Plaintiff's proposed construction shows that the claims are directed to the unconventional activity of circulating between a plurality of idle screens rather than a singular idle screen such as that of the Nokia S60. Even Defendant's

suggestion that "circulating" is not part of what Dr. McClellan states was unconventional is indicative of the fact that claim construction is necessary here.

Applying the correct construction to this term would also impact the Court's abstract idea analysis. Plaintiff's proposed construction shows that the claims are directed to a specific improvement to idle screens, rather than Defendant's contention that they are merely directed to the abstract idea of organizing and displaying visual information (which is improperly untethered to the claim language). *Commun. Interface Techs., LLC v. Albertson's LLC*, No. 4:20-CV-550-SDJ, 2021 U.S. Dist. LEXIS 186226 at *21 (E.D. Tex. Sep. 29, 2021).

B. <u>The Claims of the '060 Patent Require Construction Before Any Ruling on Eligibility</u>

Applying the correct constructions to the claims of the '060 Patent would also, at a minimum, impact the Court's determination of whether the claims contain an inventive concept. As the '060 Patent discusses, at the time of the inventions mobile communication terminals comprised cameras capable of taking a photo and transmitting the photo to another terminal. Doc. No. 24-5 at 1:24-37. However, the camera phones of this era were limited in their ability to only transmit the image information corresponding to the photo. *Id*. at 1:38-42. Further, Dr. McClellan states that embedding positional data in image files was unconventional activity in camera phones at the time of the invention of the '060 Patent. Doc. No. 24-3 at ¶ 24. Defendant does not address the problems with conventional camera phones that were identified in the '060 Patent and the McClellan Declaration. And the prior art patent Defendant improperly relies on is inapposite as—in one instance—it does not relate to camera phones at all and—in the other instance—it does not disclose inserting information corresponding to the location of the terminal at the time of shooting (discussed below) let alone indicate that this was conventional activity.

The correct construction of the claim phrase "inserting the received location data into the first image data to generate a second image data" is "inserting information received at the terminal corresponding to the location of the terminal at the time of shooting into the first image data to generate the second image data." This proposed construction is supported by at least the '060 Patent (Doc. No. 24-5) at Abstract and 1:48-62. Under this construction the fact that the claims are directed to unconventional activity at the time of their invention is clear as it was unconventional for camera phones to receive information corresponding to the location of the camera phone at the time of shooting and insert this information into image data. The significance of this proposed construction is, again, shown by Defendant's motion itself. Defendant argues that the '060 Patent's "recitation of generic, conventional components cannot confer eligibility." The proposed construction refutes Defendant's argument. Plaintiff's proposed construction also clarifies that the claimed unconventional activity differs from the prior art relied on by Defendant, which does not describe first image data or generation of second image data as claimed.

Applying the correct construction to this term would also impact the Court's abstract idea analysis. Defendant's proposed construction shows that the claims are directed to a specific improvement to transmitting image and location information, rather than Defendant's contention that they are merely directed to the abstract idea collecting and associating location and image data to present related content to a user of organizing and displaying visual information (which is improperly untethered to the claim language). 2021 U.S. Dist. LEXIS 186226 at *21 (E.D. Tex. Sep. 29, 2021).

Plaintiff's proposed constructions confirm that the claims are directed to patent-eligible subject matter. Therefore, claim construction is necessary prior to ruling on Defendant's Motion.

**<u>Defendant's Position: Claim Construction Is Not Necessary To Resolve LGL's Partial Motion To Dismiss on 35 U.S.C. § 101 Grounds.</u>**

To show that it is entitled to claim construction prior to a ruling on § 101, a patentee must "explain how construction of the term could prove or negate the assertion that the patents are restricted to non-routine, specific applications of an abstract idea." *Symbology Innovations, LLC v. Dexcom, Inc.*, 742 F. Supp. 3d 702, 712 (E.D. Tex. 2024). Hermes failed to do so: its proposed constructions do not take the claims out of the realm of merely using conventional computers to implement abstract ideas about manipulating information. As such, the Court should reject Hermes's attempt to avoid the consequence of how the claims were drafted—they are ineligible under Section 101. *See Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-cv-00914-JRG, 2017 WL 1398276, at *4 (E.D. Tex. Apr. 18, 2017) (Gilstrap, J.) (rejecting the need for claim construction where the patentee "failed to explain how claim construction might alter the § 101 analysis").

**A. <u>The '720 Patent:</u>**

Construing the phrase "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens" is not necessary to resolve LGL's Partial Motion to Dismiss on 35 U.S.C. § 101 grounds. Hermes's proposed construction—"in response to an input, circulating among the plurality of idle screens to display a preceding or succeeding screen"—is directed to the same abstract idea of organizing and displaying visual information that fails to recite an inventive concept.

*First*, like the plain and ordinary meaning of the term it replaces, "circulating among the plurality of idle screens to display a preceding or succeeding screen" is squarely directed to how idle screens, i.e., visual information, are displayed in response to user inputs. As the Federal Circuit explained, "merely organiz[ing] and arrang[ing] sets of visual information into layers and then present said layers on a generic display device" is directed to an abstract idea. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1383.

*Second*, Hermes's argument that the claims are directed to an unconventional activity is untethered to its proposed construction. *See Torus Ventures LLC v. Cawley Partners, LLC*, No. 2:24-CV-00552-JRG, 2025 WL 1799327, at *10 (E.D. Tex. June 30, 2025) ("a plaintiff cannot avoid dismissal simply by contending that the invention at issue is novel and that the inventive concept somehow resides in the abstract idea itself"). Specifically, Hermes claims an inventive concept because the claims are, allegedly, "directed to features that were not found in conventional mobile terminals." Dkt. 24, ¶ 22. But Hermes's support for that assertion—Dr. Stan McClellan's declaration—makes no mention of "circulating" among a plurality of idle screens. *See* Dkt. 24-3, ¶¶ 14–18. Nor does Hermes demonstrate that "circulating" among a plurality of idle screens is somehow less conventional than "displaying . . . a next one of the screens." Even if Hermes's proposed construction did render the alleged invention unconventional in a way that the plain and ordinary meaning of the term it seeks to construe did not, Hermes failed to tie that purported novelty to *eligibility* under § 101. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries.").

Accordingly, it is unnecessary for the Court to construe "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens" before ruling on § 101.

**B. <u>The '060 Patent:</u>**

Hermes's proposed construction—"inserting information received at the terminal corresponding to the location of the terminal at the time of shooting into the first image data to generate the second image data"—does

not change the § 101 analysis. The asserted claims of the '060 Patent (1) are still directed to the abstract idea of collecting image and location data (*i.e.*, location at the time of shooting), associating them (*i.e.*, inserting the location into the image), and using that combined data to present related content to the user, and (2) do not contain the "something more" that would transform those claims beyond the mere implementation of the idea on conventional equipment.

*First*, even if construction were warranted, limiting the location data to "the location of the terminal at the time of shooting" does not render the claims concrete. *See, e.g.*, *Elec. Power*, 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) ("tailoring the provision of information based on user characteristics—such as location—is an abstract idea"). The claims are still directed to the abstract idea of collecting information, associating that information, and presenting related content. *See e,g.*, *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292 (Fed. Cir. 2024) (holding that claims directed to collecting information, "associating information with images," and "presenting information" based on the collected and associated information were directed to an abstract idea).

*Second*, Hermes fails to explain how limiting the received location data to "information received at the terminal corresponding to the location of the terminal at the time of shooting" provides an inventive concept. Hermes alleges that it was unconventional for cameras to receive the location of the camera at the time of shooting and insert this location information into image data to generate second image data and that this "differs from the prior art relied on by Defendant." But prior art cited by the '060 patent already disclosed camera phones where "position information (information indicating the position such as ***photography place of the image***, latitude, longitude) . . . [is] inserted into the tag information (user comment tag, GPS Info tag) of the received image file." *See* D.I. 31 (Lenovo's Motion To Dismiss), Ex. 2, at ¶ [0117] (emphasis added), ¶ [0094] (explaining that "cellular phone 3 a" comprises "a function to receive the latitude and longitude information," "an image pick-up function," and "a function to insert the positional information of a photographic location into an image file"); *see also*, *id.*, Ex. 4 at 1:19-22 ("There is a conventional system, where a GPS unit is connected to (or built in) a digital camera and where captured images and GPS information such as positional information relating to the captured images are recorded."), 3:10–27. Thus, Hermes's proposed construction cannot provide an inventive concept.

In short, Hermes's construction of "inserting the received location data into the first image data" fails to move that claim limitation into the realm of "something more" than reciting the result (inserting location at the time of shooting into the image data) without reciting how that result is achieved (a specific new technical solution for inserting that is not just carrying out the inserting with conventional equipment).

Sincerely,

*/s/ Melissa R. Smith*

Melissa R. Smith