UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HERMES IP MANAGEMENT LLC,<br>*Plaintiff*,<br>LENOVO GROUP LTD.,<br>*Defendant*. | Civil Action No. 2:25-cv-00944-JRG |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. THE CHALLENGED PATENTS ..... 2

A. The ’720 Patent ..... 2

B. The ’060 Patent ..... 3

III. ARGUMENT AND AUTHORITIES ..... 3

A. Legal Standards ..... 3

1. Standard for Dismissal Under Rule 12(b)(6) ..... 3

2. Standard for Patent Eligibility Under 35 U.S.C. § 101 ..... 5

B. The ’720 Patent is Directed to Patent Eligible Subject Matter ..... 5

1. The Claims are Not Directed to an Abstract Idea ..... 5

2. The Claims Recite an Inventive Concept ..... 8

3. LGL’s Criticism of the Allegations in the Amended Complaint are Erroneous ..... 10

C. The ’060 Patent is Directed to Patent Eligible Subject Matter ..... 11

1. The Claims are Not Directed to an Abstract Idea ..... 11

2. The Claims Recite an Inventive Concept ..... 13

3. LGL’s Criticism of the Allegations in the Amended Complaint are Erroneous ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
*882 F.3d 1121, 1125–28 (Fed. Cir. 2018)* ........ *4, 5, 10, 15*
*AI Visualize, Inc. v. Nuance Commc'ns, Inc.,*
*97 F.4th 1371 (Fed. Cir. 2024)* ........ *12*
*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208, 217-18 (2014)........ 5
*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........ 4
*Berkheimer v. HP Inc.,*
*881 F.3d 1360, 1368 (Fed. Cir. 2018)* ........ *4, 5, 10, 15*
*Bowlby v. City of Aberdeen*,
681 F.3d 215, 218 (5th Cir. 2012)........ 4
*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306, 1318 (Fed. Cir. 2019)........ 5
*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)........ 7, 8
*Contour IP Holding LLC v. GoPro, Inc.,*
*113 F.4th 1373 (Fed. Cir. 2024)* ........ *12*
*ContourMed Inc. v. Am. Breast Care L.P.,*
*No. H-15-2769, 2016 U.S. Dist. LEXIS 34408 at *5 (S.D. Tex. Mar. 17, 2016)* ........ *15*
*DDR Holdings v. Hotels.com*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)........ 7
*Electric Power Group v. Alstom S.A.*,
830 F.3d 1350, 1354 (Fed. Cir. 2016)........ 6, 12
*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327, 1334 (Fed. Cir. 2016)........ 5, 6
*Gree, Inc. v. Supercell Oy*,
No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 82367 at *34 (E.D. Tex. April 16, 2021)........ 8
*IBM v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022)........ 6, 7
*Intellectual Ventures I LLC v. Capital One Finance Corp.*,
850 F.3d 1332, 1341 (Fed. Cir. 2017)........ 6
*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335, 1346 (Fed. Cir. 2018)........ 6
*Lone Star Fund V(U.S.) L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387 (5th Cir. 2010)........ 4
*Maxell, Ltd. v. TCL Elecs. Holdings Ltd.*,
No. 5:23-CV-00108-RWS-JBB, 2025 U.S. Dist. LEXIS 62101 at *29-30 (E.D. Tex. Jan. 13, 2025)... 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299, 1313 (Fed. Cir. 2016) .......... 5, 7

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .......... 12

*Sapphire Crossing LLC v. Quotient Tech.*,
Civil Action No. 18-1717-MN-CJB, 2020 U.S. Dist. LEXIS 57033 (D. Del. April 1, 2020) .......... 13

# I. INTRODUCTION

Defendant Lenovo Group Ltd.'s ("LGL") Partial Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 31) (the "Motion") alleging purported ineligibility of U.S. Patent Nos. 8,855,720 ("'720 Patent") and 9,613,060 ("'060 Patent") (the "Challenged Patents") should be denied. As an initial matter—pursuant to the Federal Circuit's holdings in *Aatrix* and *Berkheimer*—the allegations in the Amended Complaint (Dkt. No. 24), the content of the of the Challenged Patents themselves, and the Declaration of Stan McClellan, Ph.D. ("McClellan Dec."), when viewed in the light most favorable to Hermes, preclude granting the Motion. Further, at both *Alice* steps one and two, examination of the Challenged Patents shows that they are directed to technological solutions to problems with mobile phones and provide inventive concepts as a part of the claimed subject matter. The burden is on LGL to show invalidity by clear and convincing evidence, and as LGL does not and cannot show that the Challenged Patents are directed to nothing more than abstract subject matter. The Motion is, therefore, deficient and should be denied.

LGL applies an overly broad abstract idea analysis that divorces the claim limitations from the purported abstract idea. Furthermore, it improperly criticizes the incorporation of generic components in the claimed invention in an attempt to conceal inventive concepts. The claims of the '720 Patent provide technological solutions to overcome issues with singular and static idle screens that were common at the time of the inventions; and the claims of the '060 Patent provide technological solutions to overcome limitations in the provision of location-based services based on image and location data faced by camera phones at the time of the invention. Further, the claims of the '720 Patent exhibit an inventive concept that is evidenced—at least—by requiring the unconventional step of circulating among a plurality of idle screens. Similarly, the claims of the '060 Patent exhibit an inventive concept evidenced—at least—by requiring the unconventional step of inserting information received at the terminal corresponding to the

location of the terminal at the time of shooting. Also, the Motion is premature because claim construction and claim construction discovery are necessary before a determination on eligibility of the challenged claims can be made. *See* Dkt. No. 41. Lastly, LGL incorrectly assumes that Claim 1 of the Challenged Patents is representative of all of the asserted claims. Accordingly, the Motion should be denied.

## II. THE CHALLENGED PATENTS

### A. The '720 Patent

The '720 Patent enumerates several problems with conventional methods for setting up idle screens at the time of the inventions in 2006, stating:

> "once an application is used for the idle screen, it is impossible to present another application on the same idle screen" (2) "when another application is to be used for the idle screen, tree-structured menu items must be searched through a number of steps, which renders it inconvenient to modify the idle screen" and (3) "although basic applications (e.g. address book, text message) may be given shortcuts on the key input module for direct access, the limited number of key buttons on the terminal makes it impossible to assign shortcuts to all of the ever-increasing applications."

Dkt. No. 24-2 at 2:23-34. The McClellan Dec., which is attached to Hermes' Amended Complaint, explains that conventional mobile terminals at the time of the inventions of the '720 Patent comprised a singular and static idle screen. Dkt. No. 24-3 at ¶ 14. The McClellan Dec. further details various examples of conventional 2006-era idle screens with the above-described problems, including those seen on Windows Mobile 5.0 and the Nokia S60 3rd Edition. *Id*. at ¶¶ 15-16. The stated goal of the '720 Patent was to solve the above-mentioned problems occurring in the prior art by providing an apparatus and a method for providing a spin-home function for a mobile communication terminal so that, when a user of the mobile communication terminal designates an application as a spin-home and runs a spin-home program, the application is circulated and displayed on the display module in response to a user input. Dkt. No. 24-2 at 2:38-50. The '720 Patent did so—at least—by requiring the following unconventional steps in the claims: (1) setting an idle screen to be displayed in an idle state of a mobile terminal among a plurality of screens; (2) displaying, in the idle state, one of the screens as the idle screen on a display unit

of the mobile terminal; (3) displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens; and (4) the idle screen is displayed on the display unit with indicators corresponding to the screens. Dkt. No. 24-3 at ¶¶ 17-18.

### B. The ’060 Patent

The ’060 Patent identifies problems with camera phones at the time of the invention circa 2005. It states that mobile communication terminals comprised cameras capable of taking a photo and transmitting the photo to another terminal. Dkt. No. 24-5 at 1:24-37. However, critically, the camera phones of this era were limited in their ability to only transmit the image information corresponding to the photo. *Id*. at 1:38-42. The McClellan Dec. explains that conventional camera phones from that era did not utilize geo-location or geo-tagging because the technology required to make GPS feasible for use on mobile phones was still in its infancy. Dkt. No. 24-3 at ¶ 21. These limitations were the product of the limited-resources mobile terminals themselves and were only removed with the introduction of miniature, low-power GPS receivers in 2007. Dkt. No. 24-3 at ¶ 24. The inventions of the ’060 Patent overcome these problems by—among other things—requiring the following unconventional steps in the claims: (1) inserting the received location data into the first image data to generate a second image data; (2) a selection input for an image corresponding to the second image data; (3) location-based service data corresponding to the location data of the selected second image data; and (4) providing the location-based service to the another terminal by using the received location-based service data. Dkt. No. 24-3 at ¶¶ 23-24.

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standards

#### 1. Standard for Dismissal Under Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of*

*Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V(U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Courts must accept well-pleaded factual allegations as true at the Rule 12 stage, including allegations that the claimed invention contains unconventional or technical improvements. The Federal Circuit has made clear that such allegations raise factual disputes that preclude dismissal under § 101. In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit found that the complaint and proposed amended complaint contained "numerous allegations" that the claimed invention "improved the functioning and operation of the computer" and included "unconventional features," which the district court was required to accept as true. 882 F.3d 1121, 1125–28 (Fed. Cir. 2018) (holding that well-pleaded allegations of an inventive, non-conventional improvement created factual disputes under *Alice* step two and therefore "preclude[d] dismissal under Rule 12(b)(6)"). The court emphasized that a Rule 12 decision cannot disregard factual allegations regarding the inventive nature of the claimed technology. Similarly, in *Berkheimer v. HP Inc.*, the Federal Circuit found that "[t]he question of whether a claim element or combination is well-understood, routine and conventional is a question of fact." 881 F.3d 1360, 1368 (Fed. Cir. 2018) (holding that where the specification described the claimed improvements as unconventional, this evidence created a factual dispute that precluded summary judgment). The court further explained that § 101 cannot be resolved on the pleadings or at summary judgment when such factual disputes exist. *Id*. at 1369–70.

### 2. Standard for Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines the scope of patentable subject matter broadly. 35 U.S.C. § 101. The Supreme Court has set forth the well-known *Alice* test to determine whether a patent merely claims an abstract idea and is thus patent ineligible. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014)). At step one, courts consider the claims in their entirety to ascertain whether "their character as a whole is directed to excluded subject matter." *Enfish*, 822 F.3d at 1335. Courts "must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). If the claims are directed to excluded subject matter, step two determines whether the claims provide an "inventive concept." *Alice*, 573 U.S. at 217-18. This is a factual inquiry. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("[t]he district court thus further erred by ignoring the principle, implicit in *Berkheimer* and explicit in *Aatrix*, that factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101") (citing *Berkheimer*, 881 F.3d at 1369 ("Whether something is... conventional... at the time of the patent is a factual determination... [that] goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art... does not mean it was... conventional.")); *Aatrix Software*, 882 F.3d at 1126-27.

## B. The '720 Patent is Directed to Patent Eligible Subject Matter

### 1. The Claims are Not Directed to an Abstract Idea

LGL fails to show that the claims are directed to the abstract idea of organizing and displaying visual information.[1] The relevant inquiry at *Alice* step one is whether the claims are directed to a specific

[1] LGL also erroneously argues that Claim 1 is representative of all of the claims of the '720 Patent. For example, Claim 8 recites a control unit that performs specific technical functions. Doc. No. 24-2 at Claim 8. The control unit performs specific functions that further establish the concrete nature of the claimed

improvement in the capabilities of computing devices, or, instead, "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336. LGL improperly oversimplifies the claims, stripping the claims of any context and ignoring the specific limitations that solve the identified problems. By way of example, Claim 1's requirements of "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens," in part, provides a technical way to address that it was "impossible to assign shortcuts to all of the ever-increasing applications" in the prior art. Dkt. No. 24-2 at 2:32-34. Since the claims here are directed to an improved user interface that provides technical solutions to specific problems identified in the specification, they fall under the line of cases holding technology-based improvements to prior art systems are not abstract.

LGL's reliance on *IBM v. Zillow Grp., Inc.*, 50 F.4th 1371 (Fed. Cir. 2022), for the proposition that organizing and displaying information is always an ineligible abstract idea is overstated.[2] In *IBM*, the Federal Circuit found claims directed to an abstract idea because the claims "merely organize and arrange sets of visual information into layers and then present said layers on a generic display device" *without* "recit[ing] an improvement in any computing technology." 50 F.4th at 1380. Here, in contrast, the claimed inventions improve the functionality of mobile terminals by making applications accessible when they previously were not. The inventive user interface operates more efficiently and solves known technical problems with inconvenient tree-structured menus, assigning shortcuts with a limited number of key buttons, and the inability to present multiple applications on the same idle screen. Dkt. No. 24-2 at 2:23-

---

invention. *Id*. at 5:30-40. Claim 1 does not recite the control unit, and is, therefore, not representative due to Claim 8's additional limitations.

[2] LGL's reliance on *Electric Power Group v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), *Intellectual Ventures I LLC v. Capital One Finance Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017), and *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) is similarly misplaced as LGL overlooks the improvement in computing technology aspect of the analysis.

34. By solving these technical problems, the claims improve the functioning of the mobile terminal. The solutions improve efficiency and make applications accessible in a way that was not previously possible. Moreover, in *IBM*, the claimed method had "long been done by cartographers creating paper maps." 50 F.4th at 1381. No analogous statement can be said of the claims of the '720 Patent.

To further distinguish *IBM*, the claims here critically recite limitations specific to a defined computing environment, making the specific steps of the method for setting an idle screen not generic or abstract. LGL misses the point that, in *IBM*, the claims were "not limited to computer screens or any device at all." 50 F.4th at 1381. Here, in contrast, the claims are narrowly limited to an idle screen of a mobile terminal in the idle state. In this regard, the claims clearly do not preempt the abstract idea of organizing and displaying visual data, like the claims at issue in *IBM*. Similarly, the problems solved by the '720 Patent, *i.e.*, inconvenient application accessibility, are specific to the computing environment of mobile terminal idle screens in the idle state. Just as the Federal Circuit found in *DDR Holdings v. Hotels.com*, "these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world... Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d 1245, 1257 (Fed. Cir. 2014). Such improvements to technology itself, rather than mere computerization of a commonplace human activity, are patentable. *See McRO*, 837 F.3d at 1313.

The claims here are similar to those found in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018). In *Core Wireless*, the Federal Circuit held claims patentable because they were "directed to particular or specific implementations of presenting information in electronic devices." 880 F.3d at 1362-63. *Core Wireless* involved a patent directed to "improved display interfaces" of electronic devices that "allow a user to more quickly access desired data stored in, and functions of applications included in the electronic devices," particularly those with small screens like mobile

telephones. *Id*. at 1359. The Federal Circuit held that the asserted claims were directed to "an improved user interface for computing devices" that was patentable because it addressed problems specific to navigating applications on small screens, as repeatedly emphasized by the patent's specification. *Id*. at 1362-63. Here, the same result is demanded as the claims are directed to an improved idle state for mobile terminals that address problems specific to assigning and navigating multiple applications on idle screens, as explained in the specification. Dkt. No. 24-2 at 2:23-34. In this regard, the claims are directed to particular and specific implementations of setting idle screens in mobile terminals, not merely generic functional recitations in the abstract.[3] The claims of the '720 Patent are therefore patent eligible.

**2. The Claims Recite an Inventive Concept**

Even if the Court were to reach Alice step one, the claims recite a technological improvement, and in any event factual disputes preclude dismissal at step two. User interface improvements, such as the circulating idle screens provided for by the '720 Patent, deliver an inventive concept at *Alice* step two. *See*, *e.g.*, *Maxell, Ltd. v. TCL Elecs. Holdings Ltd.*, No. 5:23-CV-00108-RWS-JBB, 2025 U.S. Dist. LEXIS 62101 at *29-30 (E.D. Tex. Jan. 13, 2025) (finding user interface claims eligible under Step 2); *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 82367 at *34 (E.D. Tex. April 16, 2021) ("the claims are not routine, well-understood, or conventional, and reflect improvements to how the recited computer components interact to provide a unique user interface"). The '720 Patent claims recite a specific implementation of an invention that is neither routine nor conventional. Conventional mobile terminals at the time of the inventions of the '720 Patent comprised a singular and static idle screen. Dkt. No. 24-3 at ¶ 14. The '720 Patent enumerates several problems with conventional idle screens as set forth above. *Supra* at II.A.; Dkt. No. 24-2 at 2:23-34. As evidence of what conventional

---

[3] The table attached as Exhibit 1 demonstrates the similarities between the *Core Wireless* representative claim and claim 1 of the '720 Patent. *Cf*. Dkt. No. 31-1 (showing *IBM* claims ***not limited*** to any device at all).

idle screens at the time of the ’720 Patent inventions comprised, Dr. McClellan provided examples in his declaration attached to the Amended Complaint, including the “today screen” of Windows Mobile 5.0 and the “active standby” mode of the Nokia S60. Dkt. No. 24-3 at ¶¶ 14-15. In these conventional idle screens, there were no plurality of idle screens, no allocating applications, and no switching idle screens. *Id*. at ¶¶ 15-16. The only way to toggle between applications was via tree-structured menu items. *Id*. The claimed inventions of the ’720 Patent overcome these deficiencies by requiring specific steps aimed at allocating applications to a plurality of screens and switching idle screens. Dkt. No. 24-2 at Claim 1; *supra* at II.A. These claim elements show that there is an inventive concept aimed at solving the deficiencies in conventional phones listed above, and that inventive concept is rooted in unconventional activities at the time of the invention of the ’720 Patent. Dkt. No. 24-3 at ¶¶ 17-18.

In arguing that the claims do not include an inventive concept, LGL ignores and misconstrues the ’720 Patent and the McClellan Dec. LGL states “Although the claims include some tangible components—*e.g.*, an ‘idle screen of a mobile terminal’—they only recite using those conventional components in well-understood, conventional ways.” Dkt. No. 31 at 6. This statement is directly contradicted by the ’720 Patent specification and the McClellan Dec., which must be taken as true at this stage. Dkt. No. 24-2 at 2:21-34; Dkt. No. 24-3 at ¶¶ 17-18. Further, LGL misconstrues the ’720 Patent’s discussion of the shortcomings of conventional idle screens in column 2 to argue that these statements imply that the claims only recite conventional activity. Dkt. No. 31 at 6. The claim language and the McClellan Dec.—which LGL totally ignores—show that this is untrue. Dkt. No. 24-3 at ¶¶ 17-18. LGL further argues that the “claimed functional steps simply organize and display visual information on screens in the same way one can organize and display different playing cards.” *Id*. at 6-7. LGL proposes that the cards could be idle screens and the suits could be shortcut icons. *Id*. at 7. The specification and the claims make it clear that this analogy is inapposite. The specification describes the fact that with conventional

devices it was "impossible to assign shortcuts to all of the ever-increasing applications." Dkt. No. 24-2 at 2:32-34. Accordingly, claims also require "selecting application programs... wherein each of the selected application programs is allocated to one of the screens." *Id*. at Claim 1. The claims also require "indicators corresponding to the screens" on the displayed screen. *Id*. Even viewing this far-fetched analogy in the most favorable light, the claimed invention cannot be performed with playing cards. Also, in attempting to argue that conventional activities are recited in the claims, it focuses on one feature described as advantageous in a section of the specification labeled "Industrial Applicability." Dkt. No. 31 at 7. However, claimed advantages are described throughout the specification, and the "Industrial Applicability" section includes other advantages such as circulating and displaying applications on the idle screen. Dkt. No. 24-2 at 7:66-8:7. Accordingly, the claims of the '720 Patent are patent eligible at step two.

**3. LGL's Criticism of the Allegations in the Amended Complaint are Erroneous**

Here, the well-pleaded allegations in the Amended Complaint preclude granting the Motion. *See supra* at II.A.; *Aatrix*, 882 F.3d at 1125–28; *Berkheimer*, 881 F.3d at 1368–70. LGL ignores the language of the '720 Patent and the McClellan Dec. to confusingly imply that descriptions of what was conventional at the time of the inventions somehow pertain to the issue of novelty and are therefore irrelevant. Dkt. No. 31 at 8. The descriptions of conventional idle screens referenced above are most certainly relevant to the Court's analysis, particularly at *Alice* step 2. Further, LGL—again confusingly—argues that the active standby mode somehow shows a contradiction between the claims and the McClellan Dec.[4] *Id*. Dr.

[4] LGL's confusing arguments on this issue also show why claim construction, claim construction discovery and the development of a factual record regarding what was considered conventional at the time of the invention are necessary prior to a decision on the Motion, as claim construction would help resolve whether the claims are directed to unconventional activity. *See* Dkt. No. 41. For example, the claim phrase "displaying, in response to an idle screen switch request, a next one of the screens on the display unit according to an order of the screens" as "in response to an input, circulating among the plurality of idle

McClellan specifically describes the active standby mode as an example of a conventional idle screen, and the ’720 Patent generally describes the features of active standby mode as such. Dkt. No. 24-3 at 16; Dkt. No. 24-2 at 2:12-20.

## C. The ’060 Patent is Directed to Patent Eligible Subject Matter

### 1. The Claims are Not Directed to an Abstract Idea

The claims of the ‘060 Patent are not directed to the abstract idea of collecting and associating location and image data to present related content to a user.[5] Here, the claims recite an improved method for providing a location-based service using image data and inserted location date, which is a technology-based improvement to prior art systems and is not abstract. The claimed method recites inserting location data into image data to create a second image data, a system-level process that alters how image data is generated and used within a mobile terminal to enable downstream location-based services. As the ’060 Patent discusses, the claimed method demonstrates an improvement over the camera phones of this era which were limited in their ability to only transmit the image information corresponding to the photo and not the associated location data. Dkt. No. 24-5 at 1:38-42. The claims thus recite a specific technological solution, namely inserting received location data into the image data to generate a second image data that in turn provide a technological improvement to the mobile terminal by enabling location-based services based on that data, which was not possible in the prior art. Dkt. No. 24-3 at 23-24.

---

screens to display a preceding or succeeding screen” will make the distinctions between the claimed inventions and “active standby mode” even more clear. *Id*. at 2.

[5] LGL also erroneously argues that Claim 1 is representative of all of the claims of the ’060 Patent. For example, Claim 15 recites “a compression controller for compressing the second image data and transmitting the second image data to the image data storing section.” Dkt. No. 24-5 at Claim 15. The compression controller performs specific functions that further establish the concrete nature of the claimed invention. *Id*. at 4:22-33. Claim 1 does not recite a compression controller, and is, therefore, not representative of Claim 15’s additional limitations.

LGL characterizes the claims at an impermissibly high level of generality to make its argument. LGL's proposed abstract idea is completely disconnected from the provision of a location-based service via generated second image data in mobile terminal as required by the claims. Further, LGL's conclusion that the claims are directed to a result without saying how to accomplish that result disregards the claimed technological solution, namely using first image data provided by a terminal equipped with a camera and using location data that includes location information of the terminal to create a second image data that is used to provide improved located-based services based on the inserted location data.

LGL's reliance on *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024), is misplaced. The claims at issue in *Mobile Acuity* are of a totally different character than those at issue here. In *Mobile Acuity*, the Court found that the claims are directed to the abstract idea of "receiving information, associating information with images, comparing the images, and presenting information based on that comparison." 110 F.4th at 1292. In essence the claims were about storing information and providing subsequent access to that information. *Id*. Here, the claimed inventions are distinct as they pertain to improving the functionality of a camera phone by enabling the provision of a location-based service based on image data with location data inserted therein. Dkt. No. 24-5 at Claim 1. Here, the claims have specific and concrete requirements that achieve the provision of a location-based service through the creation of a second image data with inserted location data. *Id*. Unlike the claims at issue in *Mobile Acuity*, the claims here recite more than just generalized steps of collecting, analyzing, and presenting information.[6]

The claims here are similar to those found patent-eligible in *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024). *Contour* involved claims directed to "an improved POV camera...

[6] LGL's reliance on *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371 (Fed. Cir. 2024) and *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) is similarly misplaced as the claims in those cases were recited at a high level of generality not seen in the claims of '060 Patent.

configured to record low-and high-quality data streams in parallel, followed by the low-quality data stream's wireless transfer to a remote device" wherein "a user can remotely view and adjust the desired recording in real time, with the elimination of bandwidth limitations on wireless data transfer." *Id*. Here, the claims are directed to an improvement with specific steps that enable the provision of a location-based service through generating a first image data, generating a second image data with location data inserted therein, transmitting the second image data to another terminal and providing a location-based service corresponding to the location data of the second image data. Dkt. No. 24-5 at Claim 1. The claims here are analogous to those in *Contour* as both involve improvements to functionality resulting from the transmission of information in a specific format. For the same reason the inventions at issue in *Contour* are not directed to an abstract idea, the inventions at issue here should be found patent-eligible.

**2. The Claims Recite an Inventive Concept**

Assuming *arguendo* that the claims of the '060 Patent are "directed to" an abstract idea under *Alice* step one, the claims are still patent-eligible because they contain an inventive concept. Rule 12(b)(6) motions have been denied regarding inventions and complaints analogous to the improved location-based service method claimed in the '060 Patent. *See*, *e.g.*, *Sapphire Crossing LLC v. Quotient Tech.*, Civil Action No. 18-1717-MN-CJB, 2020 U.S. Dist. LEXIS 57033 (D. Del. April 1, 2020). The claims at issue in *Sapphire Crossing* involved "the merging of a scanned image with the menu function (*i.e.*, 'portion of the image transfer menu)." 2020 U.S. Dist. LEXIS at *6. There the plaintiff submitted a declaration similar to the McClellan Dec. related to the unconventionality of the claimed steps, and the Court denied a Rule 12 motion based on the existence of a fact issue. *Id*. *11 ("there is a fact issue regarding whether the merging step amounts to an inventive concept (with Plaintiff having plausibly alleged that it does)"). Here, the claims recite a specific implementation of an invention that is neither routine nor conventional. Hermes has pleaded and the '060 Patent and McClellan Dec. state that, at the time of the invention, mobile

communication terminals included cameras capable of taking a photo and transmitting the photo to another terminal. Dkt. No. 24-5 at 1:24-37. However, the camera phones of this era were limited in their ability to only transmit the image information corresponding to the photo. *Id*. at 1:38-42. Further, Dr. McClellan states that embedding positional data in image files was unconventional activity in camera phones at the time of the invention of the ’060 Patent. Dkt. No. 24-3 at ¶ 24. The claimed inventions of the ’060 Patent overcome these deficiencies by requiring specific steps aimed at inserting received location data into a first image data to generate a second image data, transmitting the second image data to another terminal and the other terminal receiving location-based service data that corresponds to the location data. Dkt. No. 24-5 at Claim 1. These claim elements show that there is an inventive concept aimed at solving the deficiencies in conventional camera phones listed above, and that inventive concept is rooted in unconventional activities at the time of the invention of the ’060 Patent. Dkt. No. 24-3 at 24.

In arguing that the claims do not include an inventive concept, LGL ignores and misconstrues the ’060 Patent, and it does not even reference the McClellan Dec. First, LGL erroneously describes the invention as merely “increasing the speed or convenience of computers.” Dkt. No. 31 at 13. But the specification, claims, and McClellan Dec. all make clear that the invention improves the functionality of camera phones rather than merely improving speed or convenience. LGL also states: “The specification describes no new mechanism to capture images, determine location, combine data, transmit data or render displays.” *Id*. But LGL omits any mention of the specific claim requirements (*e.g.*, inserting the received location data into the first image data to generate a second image data, receiving location-based service data corresponding to the location data of the second image data) that the McClellan Dec. describes as unconventional activity. Dkt. No. 24-3 at 23-24.

**3. LGL’s Criticism of the Allegations in the Amended Complaint are Erroneous**

Here, the well-pleaded allegations in the Amended Complaint preclude granting the Motion. *See* supra at II.B.; *Aatrix*, 882 F.3d at 1125–28; *Berkheimer*, 881 F.3d at 1368–70. LGL first argues that the allegations in the Amended Complaint are conclusory. However, LGL does not identify which allegations are purportedly conclusory, and its position is belied by the well pleaded allegations that are supported by non-conclusory statements in the McClellan Dec. LGL goes on to argue that the allegations regarding unconventionality actually concern the issue of novelty. LGL does not identify any specific allegations, and the allegations themselves clearly relate to what was conventional at the time of the invention rather than novelty. LGL then improperly relies on prior art to allege that the intrinsic record contradicts the McClellan Dec. Notwithstanding the fact that it is improper to rely on prior art at the Rule 12 stage,[7] the prior art is inapposite. U.S. Patent No. 6,437,797 (relied on by LGL) does not relate to camera phones at all. US20040229656 does not describe any limitations of claim 1 let alone indicate that anything it discloses was conventional activity.[8]

## IV. CONCLUSION

The Motion should be denied because the claims contain patent eligible subject matter. LGL has failed to show that the claims are directed to an abstract idea. Also, the claims recite an inventive concept. The Amended Complaint, the Challenged Patents, and the McClellan Dec. further contain sufficient

[7] *See ContourMed Inc. v. Am. Breast Care L.P.*, No. H-15-2769, 2016 U.S. Dist. LEXIS 34408 at *5 (S.D. Tex. Mar. 17, 2016) (finding "consideration of prosecution history and prior art references is misplaced and premature" at motion to dismiss stage).

[8] LGL's reliance on these references also shows why claim construction, claim construction discovery and the development of a factual record regarding what was considered conventional at the time of the invention are necessary prior to a decision on the Motion, as claim construction would help resolve any doubt as to whether these references actually contradict the McClellan Dec. Dkt. No. 41. For example, construing the claim phrase "inserting the received location data into the first image data to generate a second image data" as "inserting information received at the terminal corresponding to the location of the terminal at the time of shooting into the first image data to generate the second image data" will make it more clear that the prior art relied on by LGL is irrelevant as it disclosure is far too vague to be pertinent. *Id*. at 3.

allegations as to the patentability of the subject matter of the patents that, at the pleading stage, must be taken as true. Finally, claim construction is likely to resolve critically important questions that bear on subject matter eligibility, rendering the Motion premature. For these reasons, the Motion should be denied.

DATED: January 12, 2026

Respectfully submitted,

*/s/ Neal Massand*
Hao Ni
Texas Bar No. 24047205
hni@nilawfirm.com
Neal G. Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com
Stevenson Moore V
Texas Bar No. 24076573
smoore@nilawfirm.com
Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

NI, WANG & MASSAND, PLLC
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 325-2220
Fax: (972) 314-0900

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, the foregoing document was filed with the Court's ECF filing system which automatically served all Counsel of record with a copy via the ECF filing system.

*/s/ Neal Massand*
Neal Massand